Good morning, Your Honors. My name is Eric Babcock, and I represent Mr. McGee. I would like to reserve two minutes for rebuttal, if I may. This is a most unusual case, and to orient you, I'm starting off talking about the denial of my request for disclosure of the informant's identities. I could not find another case where what the informant said to the officers was presented to the jury, and then the court still denied the defense counsel the opportunity to call them as witnesses to the officer's credibility. Directing you to pages 657 of the excerpts, Officer Rovano was allowed to testify in front of the jury to exactly what these two informants allegedly told him. He said, I received information that a light-skinned black male with short hair, wearing a fitted cap with a black jacket, and who had green eyes, was staying at the Auburn Hotel Room No. 301. Furthermore, we had information that that person was armed with an older semi-automatic black firearm and was selling methamphetamine. That was the government's whole case. That was their whole theory of the case against my client. That was the charges and the factual allegations underneath them. The only, the only precipient witnesses to these allegations, besides the officers— But didn't Judge Chin do an in-camera review? Judge Chin did an in-camera review with the officers. Judge Chin never had either informant brought to an in-camera hearing. But he did hear testimony, to the extent I know what happened, he heard testimony from the officers about their interactions with the informants. And I believe he was provided some documents from the officers. Right. So he had an opportunity to independently review the underlying information, balancing the potential risk of exposing these informants, exposing danger to the officers, exposing the officers themselves, as well. So you had an independent court review. Why was it so necessary to know who the informants were? Well, before trial, Your Honor, I did make a motion to disclose the informants in the context of the motion to suppress hearing, which is when Judge Chin had the in-camera review and found that the, although they may have been witnesses as to probable cause or material witnesses to guilt or innocence, all that changed in the middle of the trial when Officer Rovano was allowed to testify to exactly what the informant said. And why was he allowed to testify to that? It was on redirect, right? After cross-examination. And why was he allowed to testify to that? He was allowed to testify because Judge Chin found that I had opened the door by cross-examining Officer Rovano and the other officers about their use of force against my client. This was an extremely physical struggle. My client, after he was arrested, was taken to the hospital, had a number of injuries. And the testimony, as you know, was that after they arrested my client, they heard some sort of thump and found underneath my client a black gun. The only defense, the only real defense to this possession of the firearm was that after the officers beat my client to a bloody pulp, without an arrest warrant, without any real articulable evidence of a crime other than just mere suspicion, they had to justify it by planting this gun. That was the only real defense to my client's alleged possession of the gun. So I had to open that door. But it wasn't just that Officer Rovano was allowed to say we had information that this McGee's description had a gun. He was also allowed to say that he was staying in Room 301 and that he was selling methamphetamine from Room 301. And as the Court knows from my insufficiency argument, mainly as to Count 2, the drug distribution charge, the evidence guessed Room 301. Wasn't he registered to that room? No. He logged in as a visitor. It's one of these, it's not far from this building, actually. Right. But his DNA was in the room, right? His DNA was on a bag containing methamphetamine that was found in the room. But the room was locked. My client didn't have a key. It was registered to a man named Terrence Ferguson. None of my client's personal possessions, nothing with my client's name on it was found in the room. He had been in the room. He was registered as a visitor in the room. His DNA was on a bag that was in a locked room. He had touched that bag. That we know. Whether he'd been in the room? Well, he'd registered to visit that room. He had registered to visit. That's right. But he had no way to get in without someone letting him in. Unless he'd previously been there. So, if these informants had been disclosed to you, what were you seeking to gain from them? How would you have used them? I would have tried to interview them first, and in any event, I would have put them on the stand to find out whether or not what the officers said they were told about this person who fit my client's description was, in fact, what they were really told. Once Officer Ravano was allowed to testify to that, the only percipient witnesses to those statements were the two informants. So you're hoping that they would have testimony that would challenge. What if they affirmed? I mean, it was equally likely that they said, yeah, that's exactly what we thought. It's possible, but we'll never know because Judge Chen didn't talk to them, and I wasn't allowed to put them in front of the jury. The point is that it wasn't just an issue of whether they were witnesses to probable cause at that point. They were percipient witnesses to my client's guilt or innocence because the officer's credibility was the whole defense. Well, but this isn't a situation where they allegedly had poor information or just like jumped on your client. They asked him to stop and they wanted to question him, and he ran. That was disputed, but yes, that was essentially what Judge Chen ended up finding. So doesn't that change the whole calculus at that point, whether they can then run after him and use whatever means at that point? Apparently, in trying to stop him to question him, then they claimed the gun, you know, they found the gun. I think actually, in light of recent events around the nation, it's a real question about what officers should be allowed to do just because someone's running away from them and the amount of force that they should be allowed to use. They had, assuming what the informants told them was true, they had reason to think my client had a gun, but he wasn't doing anything at the time other than not wanting to talk to them. He was already on his way upstairs when they first saw him, and they said that once they identified themselves, he sort of picked up his pace, but he was already going into the hotel. So at that point, just because he wouldn't stop, are the officers allowed to beat him, to kick him in his face, which they testified they did? Right. Well, the way you pose it, you're ignoring the testimony with regard to their testimony, which apparently the jury believed about him resisting. Well, the resisting was, they never testified he assaulted them. They said his hands were in his pockets, and he wouldn't pull his hands out. Right. They asked him to remove his hands. That's right. Knowing that he had information that he had a gun. He's wearing a black jacket, he puts his hands in the pockets, and he won't take them out. That's the resisting. Well, when they know he has, or have information that he has a gun, right, police officers don't have to sit there and then, what, walk away, are you saying, at that point? They know that he may be involved in committing a crime, that he, they have some information that they say is valuable, and they believe that he has a weapon that he could, and he refuses to take his hands out of his pockets where, logically, one would think you could keep a firearm, and indeed, they find a firearm afterwards. I mean, you're saying it was planted. When someone has not actually threatened anyone or committing a crime other than walking away from the officers, I do think, even given the information that they knew from the informants, it is, he was essentially arrested with an extreme amount of force, more than justified given the information they knew. I mean, it has to, there has to be a balance here, and I understand that the allegation that they, the information that they had about him possessing a gun changes the nature of the balance, but at some point, when you, all you have is a suspicion, and you don't actually have any evident, real proof that someone's committed an arrestable offense, I mean, are you really allowed, while they're on the ground, to kick them and beat them around the head based on information from people who had been arrested and only gave information? How does that enter into it? I mean, why does that make it different from just an ordinary search, pat down, reach into a pocket, something like that? I mean, for a 1983 claim, I might understand, but for this claim, what difference does it make? I think it makes a difference. It would have been different, for example, I would say, if the informants had said, this man is about to go commit a robbery, and he's on his way to room 301, there's a big amount of drugs in room 301, and he's on his way to rob the owner of 301, and he's armed with a firearm. There's a crime about to be committed, the in that direction, then I think they would have been justified. But there's no crime actively being committed. Well, carrying a firearm's a crime. They don't know if it is or not at that point. They don't know if he's going to rob a bank. They don't know if he has a permit to carry a firearm. They don't know who he is. They don't know if he's a prohibited person. But they know he might have a firearm. That's right. There's a great likelihood, and they know that they've given him a direct instruction several times to get his hands out of his pockets. I understand that. To protect themselves. And when he refuses to do so insistently, then the question becomes, why doesn't he remove his hands from his pockets? One of the calculus reasonably is because he's trying to get his hand on it so he can shoot to kill the police officers. So they need to make a determination at that point for their safety and the safety of those in the vicinity. There are several assumptions in there, Your Honor. And I know the court has to review the record in favor of Judge Chin's ruling, but these were plainclothes officers. It was not entirely clear. They didn't speak my client's name. It wasn't necessarily clear who they were talking to. They did identify themselves as law enforcement. Officer Rovano pulled out a badge, which he had on his sweatshirt, was on a chain, pulled it out, and said, hey, man, can we talk to you? He was never even given a direct order to stop. He said, can we talk to you? And my client didn't stop. If you wanted to save time for rebuttal, you had about two and a half minutes. Thank you. I will. May it please the Court. You know, it is a little unusual for, in a case like this, where there doesn't seem to be anything particularly unique about these informants, that the district court judge wouldn't disclose who they are. Well, there was information that was presented that is in the sealed record that the district court heard that I believe was unique. And without just referring the court to the sealed record, I can't say anything more about it. But I think it was, I mean, the district court heard that evidence and made the determination that it was specific enough that it would have identified these informants just by the nature of what was said, and that this was a dangerous person who posed a threat to their safety. Now, the district court did turn over, order some information turned over. Is that correct? The district court turned over the officer's notes, which were redacted. But I think the purpose was to show that, I mean, the defense allegation was that these were just fictional people. So the fact that notes were turned over, I believe, was meant to dispel that at least in part. So that was turned over. And, of course, the district court, who had already made a credibility determination in favor of these officers, did hold this hearing and talked to the officers in person and saw the actual report about what the informants had said. So isn't that all well and fine until the door gets opened during cross-examination, and then on redirect, the government chooses then to put into play the officer's credibility based on their assessment that the informants are credible. So they're vouching for the information that the informants gave them. At that point? Well, I guess I would disagree that the government made a choice in terms of a tactical choice. I think the government was really backed into that position. The government had made a choice to put itself in a difficult position at the outset of this case by pretending that there was no information from these informants. So that when the first officer testified, the case was actually presented rather awkwardly from the government's perspective. That all of a sudden, these officers approach someone and then get very physical with that person very quickly. So the government did that to protect these informants, and had made it very clear to the defense that it intended to proceed that way unless the use of force was made a defense in this case. And the government was forced into the position of having to defend the use of force. Understood. But at that point, then, should a recess have been taken, and then the informant information turned over to the defense? I don't think so, because the question is still... I mean, the case is still governed by Roviaro at that point, where there's still a law enforcement privilege on one side, and then a defense burden to make a showing that knowing about that is going to be relevant and helpful to the defense. So that calculus hasn't changed. And the defense-only argument ever in this case was that these informants didn't exist. They could provide no information except for, as counsel sort of impliedly conceded in his argument, in support of probable cause. Their testimony wasn't percipient testimony as far as the facts of the arrest or the charges in this case. It had to do with probable cause. So this court has held in Fixin, for example, that where an informant, only the testimony goes to probable cause, then the court doesn't even need to hold an evidentiary, I mean, an in-camera hearing, much less disclose the informant's identity. In this case, I think, I mean, it was really just the defense action in this case that made it necessary to put in some limited evidence to show why these things happened, and that it was necessary for them to take such sudden measures when the defendant ran away from them. I'd have to disagree, then, talking about the reasonable suspicion issue, that there are really two independent grounds for reasonable suspicion in this case. The first is the tip from the informants, and the defense didn't get into that very much, but it's referred to in the briefing as an anonymous tip. It really isn't. It's an unidentified informant, which this court treats differently. So that's one ground of probable cause, which the informant did not have to do with the unidentified informant. Sorry, reasonable suspicion is what I meant to say. What if any history of reliability was there with the unidentified informant? There was none. So isn't it, in practical terms, essentially the same as anonymous? No. And that's based on what this court said in Palos Marquel, and subsequently what the and they put themselves in the position of being held accountable for their information. They're no longer treated as an anonymous informant. In this case, these two informants were both detained, and they were detained pending the police officers going out after McGee. So they were very much held accountable. They were actually in custody the whole time. So they didn't have an incentive to simply give made-up information and then get released and disappear into the wind. That's not what happened in this case. So I think they're unidentified informants. But to move again to the other part of the arrest, I think the way it was characterized this morning was not quite in conformance with the record. Because what happened is when they, the officers and the police, the defendant ran away. Ran away, shoved his arms into his pockets, ran away. The officers had information, credible, corroborated, cross-corroborated by the two informants, information that he had a firearm. So at that point, they had every reason to want to stop him. They didn't know if he was running away to go around a corner and pull a gun on them, or if he was going to hide and then possibly shoot them or harm someone later. They didn't have to wait to find out what he was going to do once they had reasonable information that he had a firearm on his person. But they only had that reasonable suspicion because of the information provided by the informants, correct? It wasn't just enough that he ran away or walked on. It would have been enough, actually, that he ran away under the Illinois versus Ward Law decision. There was testimony that they were in a high-crime area, an area of narcotics dealing. They identified themselves as an officer, and he ran away immediately. I think under Illinois versus Ward Law, that would have been enough. The fact that they're in a high-crime area? And that he ran away as soon as they identified themselves. I think that's, under Illinois versus Ward Law, I think that would have been enough. You think that's reasonable suspicion, that criminal activity is afoot? Yes. Well, I think I'm on solid ground with Illinois versus Ward Law in that case. But it's certainly not all the information that there was here. So my point is only that there are two, I think, independent grounds of reasonable suspicion. I think here they work together. At what point do you think he was seized for purposes of the Fourth Amendment? I think it was when he was subdued and handcuffed. So you're saying subdued. Of course, your colleague is saying that he was unreasonably beaten. And then a gun is found subsequently under him, or beneath him. Yes. I'm sorry. All right. So he seems to be arguing that it's now become a reasonable force, which I agree with Judge Clifton, it's more for a 1983 type of case than this case. But do you think that makes a difference to the seizure? I actually don't think it makes a difference in this case, exactly when he was seized. I think, and the reason I say that is that once he ran away from them, given the information they had from the informants, and given the fact that he just ran away, and they believed he had a gun, they had reasonable suspicion to detain him. And I think at that point, they weren't required to make the calculus of, you know, do we let him go if he struggles? They had a, the reasonable suspicion to detain him came with it, the reasonable suspicion to subdue him, to actually get him under control. And it really wasn't until both of his hands were handcuffed, they knew that his hands were out of his pocket, and that he was really under their control. And I think that's, you know. There can be situations where, when officers stop a suspect, and they have reasonable suspicion it can morph into a, you know, a detention for arrest. That the reasonable suspicion... That is, they use too, their stop is too intrusive, for example. It could be. I don't, no doubt. I don't think that was the case here, based on the information that they had, and that, as I think counsel would concede, this was a very rapidly evolving violent situation, that was stopped exactly when they had both of his, of the defendant's hands visible and under control. And also, at that point, had probable cause to arrest him, because of the drugs that he was holding. But, while there may be a case where the use of force is unreasonable, that issue in itself is not really an issue here. It's not an issue for this appeal. Would you agree, even under ward law, though, that if he had stopped and turned to them when they identified themselves with the badge and everything, and said, can we talk to you, and he said, no thanks, with his hands out of his pocket, and he turned and he went into a room, that they really couldn't do anything at that point? If they had had... Well, I guess, if they had had no... Assuming they did not have that previous information. Yes. Assuming they had just... Even if they had that previous information, but his hands aren't in his pocket, he's not being any threat, and he just said, you know, I'll pass on talking to you, and then went into a room. Really, what changed the calculus was his behavior immediately after they identified themselves. Well, I agree that that was an aggravating factor. But, I think that given what the informants told him, they actually had the reasonable suspicion to detain him. So, they could have kept him from even sauntering away at that point. What more could they have done? What they had at that point was an unidentified informant whose reliability was not known, saying that somebody with the general description that they could... They could stop him. What more could they do at that point? I think they could have determined his identity. They could have asked him some questions. If nothing came of the brief questioning, if they didn't have any further suspicion to detain him, then I think it would have been the classic brief Terry stop. They would have had to let him go. Could they have conducted any sort of search? I think, now, if they had not had any information that he had a weapon on him... Suppose the unidentified informant had said, there's a person with a gun, with the same kind of general description. Would that by itself be enough? Well, Your Honor said general. I mean, in this case, it was very specific. So, I don't think they had... They could reasonably assume that that was the same person. The description he gave, we could debate how general or specific that was, but the description that was given, there's a person with that description that has a gun. Without the flight, without the hands in the pocket, would that have been enough to conduct a search? I think they could frisk him. They could frisk the outside of his clothing, because they had a reasonable, articulable suspicion that he was armed. So, for officer safety, I think they could have frisked him for weapons, not for drugs. I'd like to speak briefly about a couple of the other issues. The sufficiency of the evidence, I think there was plenty of evidence for the jury to find that the control over the drugs, the DNA evidence by itself probably was enough, but also the fact that he had moved out of another room at the hotel and had registered at least as an overnight guest in this one, and that he had matching sort of baggies of drugs on his person to the kinds of baggies that were found in the room. The other issues that counsel didn't mention, the evidentiary hearing, I think there was plenty of record that the defendant put in himself to have an evidentiary hearing in this case. It was certainly an error not to arraign him on the superseding indictment, but in this case, no effect on his substantial rights. And finally, the gun described in the superseding indictment was the same as the gun that was testified in description at trial. So I think that there was reasonable suspicion in this case. There was sufficient evidence for conviction, and there was discretion on the part of the district court to protect these two confidential informants' identities. Thank you, Your Honor. Okay. Thank you. I believe you had about two and a half minutes. Thank you, Your Honor. Unless the Court has questions about other issues, I just want to talk about the issue of the courts holding an evidentiary hearing on our motion to suppress when the government hadn't even bothered to get declarations from their officers, sort of the reverse of the typical situation where it's the defendant who is reluctant to go under oath. And in this case, the Court had information about what the police officer's version was. It was in the police reports. It was in the police reports, and presumably that's what they would say later. But it wasn't a sworn declaration. These are local police reports from the San Francisco Police Department. Many judges that I know, we would never even come to the Court for argument. It would have been, look, after looking at the briefing, the motion would have been granted. Well, didn't Judge Chen say that for him there was, he wanted to better understand the facts? That there was a dispute? He saw just the information that was in the motion? Certainly, the government asserted there was a dispute. No, but it's a little bit unusual for a defendant to complain that the district court conducted an evidentiary hearing on a motion to suppress. It's very unusual because Rarely. I don't think I've ever heard that argument before. I don't think I've ever heard it. Usually they're upset because the district court doesn't conduct an evidentiary hearing. That's true. But usually the government puts their officer's declarations attached to the opposition papers so we know exactly what they're going to say and what they're going to do. That's not necessarily always the case. Are you saying, though, from the submitted briefs that there wasn't any contested facts? I mean, isn't that the whole point of having a hearing, particularly an evidentiary hearing, is when there are raised issues of contested facts? I'm saying the local rule, which carries the force of law, requires declarations in support of any brief or opposition. If this was a civil case, they would have been laughed out of court. Opposition to a summary judgment with no declarations, there has to be appropriate But if it's acceptable as evidence, I mean, if the police reports are sworn and it's before the court because they're attached to your papers, why isn't that enough in a civil case or a criminal case? Police reports aren't admissible. And whatever the form of declaration on the local police report, it's certainly not appropriate. It doesn't meet the federal standard for a declaration under penalty of perjury under the laws of the United States. Oh, Judge Chin did find, though, that it was signed under the penalty of perjury, and that's why he accepted it. I don't know that he made any finding in that regard. Certainly, he found that there were factual issues that needed to be resolved by way of a hearing. I think he did make some sort of finding that that was an acceptable form because he found that it was sworn testimony under perjury. But the fact is that he found it acceptable and he found that it contested facts. So under the local rules, it provides that he can have an evidentiary hearing. I will submit that. All right. Thank you. Okay. You're over your time now. Thank you very much. I appreciate your argument. Thank you to both. The matter is submitted.
judges: Paez, Clifton, Kobayashi